**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Travis BUCKLEY, Defendant-Appellant.**

**No. 77–5449.**

United States Court of Appeals, Fifth Circuit.

Dec. 18, 1978.

Rehearing and Rehearing En Banc Denied Jan. 29, 1979.

Travis Buckley, pro se.

C. Everette Boutwell, Laurel, Miss., for defendant-appellant.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., M. Carr Ferguson, Asst. Atty. Gen., Tax Div., Gilbert E. Andrews, Chief, Appellate Section, Robert E. Lindsay, Atty., Charles E. Brookhart, Atty., Mary L. Jennings, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before RONEY, TJOFLAT and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Appellant James Travis Buckley, an attorney, was charged in an eight-count indictment with violating two sections of the Internal Revenue Code of 1954. The indictment charged Buckley with three counts of attempted tax evasion under 26 U.S.C.A. § 7201 and five counts for failure to file a return under 26 U.S.C.A. § 7203, all allegedly occurring during a five-year period from 1970 through 1974. Following a six-day trial in the United States District Court for the Southern District of Mississippi, the jury, after two hours of deliberation, returned a verdict of guilty on each of the eight counts of the indictment. On appeal Buckley challenges, *inter alia,* the validity of his convictions for failure to file in the years in which he was also convicted for attempted tax evasion. Because we agree with appellant on this point, we modify the decision below by vacating the convictions and sentences for failure to file in 1970, 1973 and 1974; otherwise, we affirm.

## I. Entrapment

Buckley raised an "entrapment" defense at trial consisting of testimony by him and his friends to the effect that the F.B.I. was engaged in a plot to see him "behind bars." Buckley asserted that he had incurred the ire of the F.B.I. by representing several of the criminal defendants in a trial arising out of the fire bombing death of Vernon Dahmer, the Hattiesburg, Mississippi, civil rights leader, and by his representation of numerous other defendants in cases where he had had occasion to cross-examine F.B.I. agents. Appellant's friends testified that they had overheard remarks made by F.B.I. agents to Buckley stating that "we will get you one way or the other." Buckley himself testified that an I.R.S. agent had visited him in 1966 in connection with an audit of his return and warned him that the F.B.I. was "out to get him" regardless of whether he filed or not. Numerous acts of harassment were also alleged. As a result of his conversation with the I.R.S. agent and his experiences with the F.B.I., Buckley testified that he failed to file income tax

returns because he was afraid that if he were to file he would be indicted with fabricated charges of filing fraudulent returns, a felony.[1] Choosing the lesser of two evils, then, he elected not to file, knowing it to be punishable only as a misdemeanor. Arguing that the above evidence was sufficient to raise the issue of entrapment, appellant now contends that the trial court erred in refusing to instruct the jury on the defense of entrapment.

Appellant is certainly correct in asserting that the issue of entrapment is for the jury to decide, assuming it is properly raised. *United States v. Benavidez*, 558 F.2d 308, 310 (5th Cir. 1977); *United States v. Harrell*, 436 F.2d 606, 612 (5th Cir. 1970); *Pierce v. United States*, 414 F.2d 163 (5th Cir.), *cert. denied*, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969). Nonetheless, in order to raise the issue, the initial burden of going forward with the evidence lies with the defendant; he must produce "some evidence, but more than a scintilla," raising the defense. *United States v. Groessel*, 440 F.2d 602, 606 (5th Cir.), *cert. denied*, 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971). *See also United States v. Benavidez*, 558 F.2d 308 (5th Cir. 1977); *United States v. Harper*, 505 F.2d 924 (5th Cir. 1974). Once the defendant has discharged this obligation, the prosecution must ultimately prove beyond a reasonable doubt that the defendant was not entrapped into committing the offense. *United States v. Benavidez*, 558 F.2d 308, 310 (5th Cir. 1977); *United States v. Harrell*, 436 F.2d 606, 612 (5th Cir. 1970). If the defendant fails to carry his burden of going forward with the evidence, however, he is not entitled to have the jury consider the defense of entrap-

ment. *United States v. Harper*, 505 F.2d 924, 926 (5th Cir. 1974); *United States v. Groessel*, 440 F.2d 602, 606 (5th Cir.), *cert. denied*, 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971).

Entrapment occurs "when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." *Sorrells v. United States*, 287 U.S. 435, 442, 53 S.Ct. 210, 213, 77 L.Ed. 413 (1932). *See also United States v. Russell*, 411 U.S. 423, 434–35, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *United States v. Costello*, 483 F.2d 1366, 1367 (5th Cir. 1973); *United States v. Groessel*, 440 F.2d 602, 605 (5th Cir.), *cert. denied*, 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971). Although Buckley's story was vigorously denied by the government at trial,[2] we nonetheless accept it as true for the purposes of deciding this issue. And even assuming Buckley's allegations to be true, the evidence does not raise the defense of entrapment.

It is clear from the evidence that the criminal intent did not originate with the government, but instead formed within the defendant's own mind, in response to an alleged plot by the F.B.I. to see him incarcerated. As Buckley testified:

In 1966 in my office in Bay Springs, Mississippi an agent of the Internal Revenue visited me and audited my books and papers and accounts and then later came to my house . . . I don't know the man's name and I don't know if I knew it then, but there were actually two differ-

---

1. Although Buckley's testimony relating to his entrapment defense at trial consisted solely of his statement that he was "afraid" to file a return, the reasonable inference to be drawn from that testimony and the arguments in his brief is that he did not file during the years in question because he was afraid that the F.B.I. would fabricate information to charge him with filing fraudulent returns, should he choose to file.

2. The government adduced evidence at trial indicating that Buckley's returns were never audited in 1966, thus casting doubt on his assertion that he was visited by an Internal Revenue Agent. The government also presented evidence to the effect that the F.B.I. had forwarded information concerning Buckley to Internal Revenue simply as a routine part of their investigation into a threat on Richard Castle's life. The F.B.I. claimed that this was the only connection that they had had with the Buckley case.

ent ones visited me at different time[s], but one of them told me then and told me at my home later, said, that the Federal Bureau of Investigation is after you and he gave me this and told me it was a friendly advice and a friendly warning, he said, 'they will get you one way or the other and I am telling you this as a matter of trying to help you and trying to advise you to be on the alert.' And he said, 'I know them well enough to know that it does not make any difference whether you file or not, if they can get you,' but he said, 'I'm not telling you not to file and I'm not telling you to file, but you know the penalties for not filing,' and he said, 'I'm under an obligation to advise you that the law requires that you file.'

As the testimony thus shows, there was no attempt by any law enforcement official to induce or entreat Buckley to commit the offenses for which he was charged; rather, the decision not to file returns for the years 1970 through 1974 was one conceived entirely by Buckley himself, in response to an alleged threat by the F.B.I. Whether that threat is real or fancied is immaterial to our decision here. The course of action pursued by Buckley was the result of a voluntary and informed decision to violate the law, a far cry from the genuine entrapment situation where an otherwise innocent and law abiding citizen falls prey to government seduction and is persuaded to commit a crime. If Buckley truly believed the F.B.I. was "out to get him," then he should have scrupulously obeyed the law, remaining confident that he would be cleared of any contrived charges. Because the evidence presented by Buckley failed to raise the defense of entrapment, if was not error for the trial judge to refuse to charge on entrapment.

## II. Attorney-Client Privilege

Buckley next asserts that it was error to allow prosecution witness Castle to invoke the attorney-client privilege and prevent his three attorneys from testifying. Richard Castle had been a close friend of Buckley's during the years in question and supplied very damaging testimony enumerating the various affirmative acts of evasion practiced by Buckley. In an effort to impeach Castle's credibility, Buckley sought to call to testify three attorneys who represented Castle in a civil action brought by Buckley to collect attorney's fees. Buckley had represented Castle in a personal injury suit in which a $100,000 settlement had been procured, but the two were unable to agree on Buckley's fee, so Buckley brought an action to recover his portion of the settlement. By way of offer of proof, Buckley disclosed that he intended to show that Castle was biased against him because of their disagreement over the amount of the fee; furthermore, Buckley wished to prove that Castle had lied to his attorneys about the settlement offer he had originally received in the personal injury case before he retained Buckley. Castle invoked the privilege and prevented his attorneys from testifying, asserting that it would be inconvenient for them to have to do so.

■■■■ Appellant concedes that the testimony sought to be elicited from Castle's attorneys was properly within the scope of the attorney-client privilege. Nonetheless, he argues that the privilege may not be invoked solely for reasons of convenience, but must be invoked out of a concern for confidentiality.

While appellant's argument may have some superficial appeal, it fails to appreciate the pragmatic considerations underlying the implementation of the policy behind the attorney-client privilege, which is to encourage the free-flowing communication and candid disclosure so vitally necessary to effective representation by counsel. This policy cannot be achieved unless a client is free to communicate with his attorney "without fear of consequences or the apprehension of disclosure." *Modern Woodmen of America v. Watkins*, 132 F.2d 352, 354 (5th Cir. 1942). *See Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Baird v. Koerner*, 279 F.2d 623, 629 (9th Cir. 1960); *Schwimmer v. United States*, 232 F.2d 855, 863 (8th Cir. 1956); 8 *Wigmore on Evidence* § 2291 (McNaughton rev. 1961).

To condition the invocation of the privilege upon a showing that it was claimed out of considerations of confidentiality would subject a client to fear of subsequent disclosure and cause him to question the wisdom of telling all to his attorney. Doubting his ability to prove subsequently that the present confidence entrusted in his attorney is prompted by the assurance that he can later claim the privilege, a client might hesitate to be completely open with his attorney and the policy behind the privilege would be frustrated. Just as we do not question the motives of a litigant who wishes to invoke an exclusionary rule of evidence, we should likewise not question the motives of a client who wishes to invoke the privilege. Predicating the invocation of the privilege upon a showing of "good faith" or "proper motive" would remove the protective shield of the privilege, and it would cease to act as an inducement to frank and unrestricted communications between attorney and client.

Appellant further contends that Castle's claim of the privilege denied him his Sixth Amendment right to confront witnesses against him and have compulsory process run in his favor. As we have recognized above, there is a valid interest to be served by the existence of the attorney-client privilege. Buckley suggests, however, that the policy behind the privilege is subordinate to his Sixth Amendment rights in this case. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), relied upon by appellant, does stand for the proposition that the Sixth Amendment rights of a criminal defendant may, in some instances, be paramount to certain governmental interests. In *Davis*, for example, the state's interest in protecting juvenile offenders, implemented by an evidentiary rule prohibiting the disclosure of their court records in subsequent judicial proceedings, was outweighed by the defendant's right to cross-examine a prosecution witness effectively. Similarly, other decisions by the Supreme Court have resolved the conflict between the Sixth Amendment and various governmental interests in favor of the defendant's Sixth Amendment rights. *See, e. g., Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *United States v. Nixon*, 418 U.S. 683 (1974).

■ We need not reach this issue, however, because even assuming arguendo that appellant's Sixth Amendment rights were infringed, we find on the basis of this record that Buckley has suffered no prejudice. Buckley asserts that his Sixth Amendment rights were violated when he was prevented from questioning Castle and his three attorneys on matters within the scope of the privilege. Buckley wished to prove that Castle was biased against him because of their disagreement over the amount of the fee owed by Castle to Buckley and that Castle had lied to his attorneys about the amount of the settlement offer he had received in the personal injury case before he retained Buckley. A review of the record reveals that Buckley was able to place this very same evidence before the jury. Castle himself readily admitted on cross-examination that he had disagreed with Buckley over the amount of his fee. In addition, Judge George D. Grubbs, who presided over the pre-trial proceedings in Buckley's state court suit against Castle for the fee, freely testified that Castle had lied to his attorneys concerning the amount of the settlement offered to him. With the essence of the desired testimony before the jury, it is obvious that Buckley was in no way prejudiced by the invocation of the privilege. *See United States v. Ashley*, 555 F.2d 462, 465 (5th Cir. 1977).

### III. Sufficiency of the Evidence

■ Buckley challenges the sufficiency of the evidence to support his convictions under both Section 7201 and Section 7203. To sustain a conviction under Section 7201 the government must prove the existence of a tax deficiency, an affirmative act constituting an evasion or attempted evasion of the tax, and willfulness. *Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *Spies v. United States*, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). The elements of an offense under Section 7203 involve proof of failure

to file and willfulness in doing so. *Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). Willfulness, within the meaning of both sections, is simply the "intentional violation of a known legal duty." *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976) (per curiam). In reviewing the evidence presented at trial, we must view it in a light most favorable to the government, for we do not have the license to weigh the evidence or assess the credibility of witnesses. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Burrell*, 505 F.2d 904, 907 (5th Cir. 1974). To reverse a conviction on the ground of insufficient evidence we must find that "a reasonably minded jury *must* have [had] a reasonable doubt as to the existence of any of the essential elements of the crime charged." *United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973). We fail to reach such a conclusion, and

from our review of the record, find the evidence more than sufficient.

### IV. Validity of the Section 7203 Convictions

Buckley was convicted for attempted evasion of taxes (Section 7201) in 1970, 1973 and 1974. He was convicted for failure to file (Section 7203) in these same years, as well as in 1971 and 1972. As shown by the diagram below, upon the Section 7201 convictions for 1973 and 1974, concurrent one-year prison terms were imposed; for the Section 7203 convictions for 1970, 1971 and 1973, concurrent six-month prison terms were imposed to run consecutively to the one-year terms; finally, Buckley received concurrent suspended sentences for the Section 7201 count in 1970 and the Section 7203 counts in 1972 and 1974, but with concurrent one-year probation terms to be served upon release from prison.

| | 1970 | 1971 | 1972 | 1973 | 1974 |
|---|---|---|---|---|---|
| § 7201 | suspended sentence with probation | | | one year | one year |
| § 7203 | six months | six months | sentence suspended with probation | six months | sentence suspended with probation |

Appellant argues, and we agree, that failure to file is a lesser offense included in a Section 7201 conviction based on the facts of this case. The government conceded as much at oral argument.[3] Where one of the affirmative acts of evasion relied upon by the government in proving attempted tax evasion under Section 7201 is the failure to file an income tax return, failure to file is a lesser included offense, and Congress did not intend for the defend-

ant to be punished for both offenses. *United States v. Newman*, 468 F.2d 791, 796 (5th Cir. 1972), *cert. denied*, 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973).

Although the government concedes that punishment may not be imposed under both statutes, it nonetheless argues that the *convictions* for failure to file should stand for the years 1970, 1973 and 1974, reasoning that a conviction without a sentence im-

---

**3.** Two of the contentions made by the government in their brief were abandoned at oral argument: first, the government conceded that probation was "punishment" for the purposes of the Double Jeopardy Clause's protection against multiple punishments for the same offense; second, the government conceded that

they had misapplied the test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), for determining whether two offenses were the "same" for double jeopardy purposes, and therefore, that failure to file was a lesser included offense of attempted tax evasion on the facts of this case.

posed thereupon is harmless.[4] We disagree. Where one offense is included in another, it cannot support a separate conviction and sentence. *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *United States v. York,* 578 F.2d 1036, 1040 (5th Cir. 1978). Thus, in situations such as the present one, where a defendant is improperly convicted for a lesser included offense, the proper remedy is to vacate both the conviction *and* sentence on the included offense, leaving the conviction and sentence on the greater offense intact. *United States v. Slutsky,* 487 F.2d 832, 845–46 n.18 (2d Cir. 1973), *cert. denied,* 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974); *United States v. Rosenthal,* 454 F.2d 1252, 1255–56 n.2 (2d Cir.), *cert. denied,* 406 U.S. 931, 92 S.Ct. 1801, 32 L.Ed.2d 134 (1972); *United States v. Newman,* 468 F.2d 791, 796 (5th Cir. 1972), *cert. denied,* 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973).

The government emphasizes that in *Jeffers* the conviction on the lesser included offense was allowed to stand,[5] 432 U.S. at 148, 97 S.Ct. 2207, and urges a similar result here. We find the government's reliance on *Jeffers* to be misplaced. In *Jeffers* the Court dealt with the contention by the defendant that 21 U.S.C. § 846, prohibiting conspiracies to commit drug-related offenses, was a lesser included offense of 21 U.S.C. § 848, which prohibits conducting a continuing criminal enterprise to violate the drug laws. Arguing that the two offenses were the same for double jeopardy purposes, Jeffers maintained that his trial and conviction for violating 21 U.S.C. § 848, occurring subsequent to his conviction under 21 U.S.C. § 846, was invalid because it placed him twice in jeopardy for the same offense in contravention of the Double Jeopardy Clause of the Fifth Amendment. Assuming arguendo that Section 846 was a lesser included offense, the Court nonetheless concluded that Jeffers had *waived* his double jeopardy rights by persuading the trial court to order separate trials and by failing to raise any double jeopardy objections at the time. Having concluded that Jeffers could not object to being separately tried and convicted for the two offenses, the Court then turned to the question of whether Congress had intended to allow *cumulative punishment* for those defendants whose conduct violates both statutes. The Court concluded that Congress did not so intend, and accordingly reduced the fines given Jeffers to the maximum amount allowable under Section 848.

In contrast, we deal here with two offenses, one of which is admittedly included within the other, and a defendant who is neither responsible for his multiple convictions nor has exhibited any conduct resembling a waiver of his rights. Jeffers could not be heard to complain of successive prosecutions because he had in fact caused them; Buckley, on the other hand, has done nothing to estop him from complaining of his multiple convictions. *Jeffers* turned on a finding of waiver; we find no waiver in this case.

■ Therefore, we modify the judgment below by vacating the convictions and sentences for failure to file (counts two, six and eight) in the years 1970, 1973 and 1974. Because it is obvious that the convictions on the Section 7203 counts did not lead the trial court to impose a harsher sentence on the Section 7201 counts than he would have in the absence of such convictions, there is no need to remand for resentencing. *See United States v. Slutsky,* 487 F.2d 832, 845–46 n.18 (2d Cir. 1973), *cert. denied,* 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974); *United States v. Rosenthal,* 454 F.2d 1252, 1256 (2d Cir.), *cert. denied* 406 U.S. 931, 92 S.Ct. 1801, 32 L.Ed.2d 134 (1972).

---

4. The very fact that the government strenuously calls for retention of the conviction belies their assertion that it is "harmless."

5. In *Jeffers v. United States,* 432 U.S. 137, 155 n.25, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), the Court pointed to *United States v. Gaddis,* 424 U.S. 544, 549 n.12, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976), as involving a situation where both the conviction and sentence on the lesser included offense were vacated.

## V. Disclosure of the F.B.I. Files

■■■■ As a final point of error, Buckley argues that the trial court committed reversible error by refusing to order discovery of the F.B.I. investigative files concerning him. Buckley contends that he is entitled to discovery by virtue of the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which the Court held that the suppression of exculpatory evidence by the prosecution in response to the request of an accused violates due process whenever that evidence is material to either guilt or punishment. In response to Buckley's motion for the discovery of these materials, the trial judge ordered the F.B.I. to submit the files to the prosecution for review and to the court for an *in camera* inspection. Both the prosecution and the trial court concluded that the files contained no exculpatory materials within the meaning of *Brady*. Having examined these files, sealed by the district court for possible review on appeal, we agree. Requiring materials sought for discovery to be submitted to the court for an *in camera* inspection is a practice which is both reasonable and protective of the defendant's rights, and, we might add, one which has received a measure of approval by the Supreme Court. *See United States v. Agurs*, 427 U.S. 97, 106, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Moreover, in areas where, as in the present case, the request involves materials the disclosure of which is arguably not in the public interest,[6] this Court has sanctioned the use of *in camera* inspections to resolve the conflicting demands of the defendant and the government. *United States v. Brown*, 539 F.2d 467, 470 (5th Cir. 1976); *see also United States v. Johnson*, 577 F.2d 1304, 1309–10 (5th Cir. 1978). Thus, we conclude that Buckley's rights were adequately protected by the procedure employed by the district court and we concur in its conclusion that the F.B.I. files contain no information that would have been helpful to Buckley's defense.

■■■■ Buckley also contends that there are two independent statutory provisions which entitle him to the requested information "as a matter of law." The first of these, Fed.R.Crim.P. 16(a)(1)(C), conditions the disclosure of information upon a showing by the defendant that the documents sought are "material to the preparation of his defense." Contrary to Buckley's assertion that Rule 16(a)(1)(C) "mandate[s] the production of such documents upon request," it is incumbent upon a defendant to make a *prima facie* showing of "materiality" in order to obtain discovery:

> Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. . . . There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor.

*United States v. Ross*, 511 F.2d 757, 762–63 (5th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975). Buckley has made no such showing here. Alternatively, even if we were to assume that a showing of materiality had been made, the information sought, by Buckley's own admission, related only two his entrapment defense, which, as we have already decided, was not a "defense" in this case.

■■■■ Similarly, Buckley's reliance on the disclosure provisions of the Freedom of Information Act (FOIA), 5 U.S.C.A. § 552(a),[7] does not support his claim of entitlement to the files. Although the FOIA provides an independent basis for obtaining information potentially useful in a criminal trial, it "was not intended as a device to delay ongoing litigation or to enlarge the scope of discovery beyond that already provided by the Federal Rules of Criminal Procedure." *United States v. Murdock*, 548 F.2d 599, 602 (5th Cir. 1977).

---

**6.** Aside from the obvious security risks created by the disclosure of the F.B.I. files, such information is also exempted from disclosure by the Freedom of Information Act. 5 U.S.C.A. § 552(b)(7).

**7.** The F.B.I. files were the subject of a separate civil action brought by Buckley prior to trial under the Freedom of Information Act.

 

### VI. Conclusion

We affirm the judgment of the district court but modify it by vacating the convictions and sentences for failure to file in 1970, 1973 and 1974 (counts two, six and eight).

AFFIRMED in part; MODIFIED in part.