The UNITED STATES of America,
Plaintiff-Appellee,

v.

John W. STONE, Shirley M. Stone,
Defendants-Appellants.

No. 81–6025.

United States Court of Appeals,
Eleventh Circuit.

April 21, 1983.

Rehearing and Rehearing En Banc
Denied June 21, 1983.

John G. Delancett, Orlando, Fla., for defendants-appellants.

John F. Murray, Act. Asst. Atty. Gen., Michael L. Paup, Thomas Preston, Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before HILL and ANDERSON, Circuit Judges, and LYNNE *, District Judge.

PER CURIAM:

Appellants, John and Shirley Stone, were indicted and convicted on four counts. Count I charged appellants under 26 U.S. C.A. § 7201 (West 1967) with attempting to evade or defeat tax in calendar year 1974. Count II charged appellants under 26 U.S. C.A. § 7206(1) (West 1967) with filing a false income tax return for calendar year 1974. Count III charged appellants under § 7201 with tax evasion in calendar year 1975, and Count IV charged appellants under § 7206(1) with filing a false tax return in calendar year 1975. The district judge

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

sentenced John Stone to six months of imprisonment on Count IV and three concurrent terms of three years of imprisonment on Counts I, II, and III. The district judge then suspended the sentence on Counts I, II and III, placing John Stone on probation for three years, with this period of probation running consecutively to the six-month term of imprisonment. As for Shirley Stone, the district judge sentenced her to three years of imprisonment on each count, the sentence on each count running concurrently. But then the judge suspended the sentence of imprisonment, placing Shirley Stone on probation for three years.

After considering appellants' several claims of error, we reject all but one. Appellants point out that Count II is a lesser-included offense of Count I and Count IV is a lesser-included offense of Count III. The government agrees. Accordingly, we remand with instructions for the district court to vacate the conviction and sentence for either Count I (the 1974 year greater offense) or Count II (the 1974 year lesser-included offense) and to vacate the conviction and sentence for either Count III (the 1975 year greater offense) or Count IV (the 1975 year lesser-included offense).

## I. SUFFICIENCY OF THE EVIDENCE

■ Appellants' main argument concerns the sufficiency of the evidence. We note the governing standard—evidence is sufficient to sustain a criminal conviction if a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (Unit B) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982).[1] To evaluate the sufficiency of the evidence, the evidence is viewed in a light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 L.Ed.2d 457, 469, 86 L.Ed. 680 (1942).

We hold that the evidence was sufficient to allow a reasonable jury to find that appellants violated § 7201 by attempting to evade tax for calendar years 1974 and 1975. We also conclude, *a fortiori,* that the evidence was sufficient to sustain the conviction for the lesser-included offenses of violating § 7206(1). Since the § 7206(1) offenses are lesser-included, and since we find the evidence sufficient to affirm the § 7201 tax evasion offenses, we need only explain why the evidence is sufficient to sustain the § 7201 convictions.

Section 7201 provides in pertinent part that "any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall" be guilty of the felony offense of tax evasion. The evidence showed that the Stones understated their income for the years 1974 and 1975. In 1974, the Stones understated their total income by $167,339.70. The additional tax due and owing from 1974 equaled $86,744.57. In 1975, the Stones understated total income by $70,683.69. The additional tax due and owing for 1975 was $41,265.18. The Stones understated their income received from three principal sources: (1) receipts from the sale of potatoes grown on their farm, (2) interest, and (3) capital gains. By far, the understatement in farm income constituted the bulk of the problem. The Stones do not dispute their failure to report their farm income accurately. They concede that they lost track of farm income totalling $119,100.00 (in 1974) and $89,260.00 (in 1975). But they attribute their omission to inadvertence. Thus, their defense centers on the element of willfulness.

■ We note at the outset that the government can use circumstantial evidence to prove willfulness. *Spies v. United States,* 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943); *United States v. Daniels,* 617 F.2d 146, 148 (5th Cir.1980). The facts concerning the understated farm in-

---

1. In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34. *Cf. Bonner v. City of Prich-* *ard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

come begin with a three-week summer vacation taken by the Stones in 1974. John asked his father, Thomas Stone, to pick up the Stones' mail and newspapers while they were gone. According to Thomas, John had also asked him to look for checks received from potato buyers. Record, vol. 6, at 401. Although John did not give Thomas deposit books, Thomas obtained a new deposit book and, during the Stones' vacation, deposited checks received ($119,100) into John's account in the bank John used. Thomas testified that he placed duplicates of the deposit slips in a box along with the mail and the newspapers he had collected during the Stones' vacation. Thomas either left that box on his porch or took the box to the Stones' residence. The evidence does not clarify who took the box to the Stones' home. It is clear, however, that the Stones received the box and possessed the duplicates of the deposit slips. Moreover, after returning from vacation, John had thanked Thomas for performing "the duties for him." Record, vol. 6, at 421. Also, in response to the prosecutor's questions, Thomas said that John might have asked if the checks had been deposited. Record, vol. 1, at 489. A similar sequence of events was repeated in 1975, when Thomas deposited $89,260 in farm income during the short period when the Stones were away on vacation.

The Stones argue that they were completely unaware of the deposits made by Thomas until they looked into the matter after Internal Revenue Service agents had begun their investigation. The Stones seem to suggest that they were unaware of the existence of deposit slips used by Thomas because the duplicates were mixed in with 20 days of newspapers and other mail. Why then did the Stones fail to discover the deposits when they reviewed their income in preparing their tax returns? They said that they prepared summary sheets, which they gave to their accountant who prepared their tax returns for 1974 and 1975, by using deposit slips rather than bank statements to total their income, and their collection of deposit slips did not include the duplicates of the deposits made by Thomas.

■ Despite the Stones' version of events, the jury could have reasonably viewed the evidence as showing that the Stones were aware of the deposits made by Thomas Stone. First, duplicate copies of the deposits made by Thomas were segregated from the mail and newspapers. According to Shirley Stone, the Stones regularly used grocery bags to store checks, deposit books, and other financial records. These bags were marked by tax year. Shirley Stone testified that, after the investigation began, she found the duplicates of the deposit slips in the 1974 and 1975 grocery bags. Record, vol. 7, at 688–89. This shows that the Stones had separated the deposit slips from the mail and newspapers. In addition, the Stones may have possessed and used the actual deposit book first used by Thomas in 1974. At least the jury was entitled to infer, from the exhibits, that the Stones made deposits from the deposit book used by Thomas.[2]

Additional facts bolster the jury's verdict. The government cites more than one instance where John Stone's conduct was, according to the government, suspect. Most compelling, perhaps, is the fact that all of this began with a routine audit, after which the revenue agent thought that the Stones had understated *expenses*. As a result, the agent proposed refunds amounting to $12,-450 for 1975 and $1,025 for 1974. In response, John Stone said that he did not

2. John Stone's bank used deposit slips with two different names. Appellants' brief emphasizes the fact that, in 1974, John Stone's deposits were made on deposit slips with the heading "Atlantic Bank of Hastings," but Thomas Stone's deposits were made on slips marked "Hastings Exchange Bank." The appellants sought to use this fact to support their claim that they were unaware of the deposit slips and the deposit book used by Thomas. Yet, appellants fail to explain the following facts. Thomas' 1974 deposits were on slips numbered 1 through 8 and marked "Hastings Exchange Bank." Deposits numbered 9, 10, 11, etc. and marked "Hastings Exchange Bank," were dated beginning with January 6, 1975. These deposits were made by the Stones themselves. However, Thomas did testify that he threw out the deposit book he had used when he got done with it. Record, vol. 6, at 426.

want a refund. When the agent informed his group supervisor of this, the supervisor advised a more detailed examination of the Stones' income.

The facts on farm income alone [3] support an inference of willfulness which the jury was entitled to find and which we cannot countermand on this appeal. Indeed, a showing of willfulness has been based on similar facts. The magnitude of the error was substantial. *United States v. Daniels,* 617 F.2d at 149; *United States v. Schechter,* 475 F.2d 1099, 1101 (5th Cir.), *cert. denied,* 414 U.S. 825, 94 S.Ct. 127, 38 L.Ed.2d 58 (1973). The understatement of farm income occurred not once, but twice. *United States v. Schafer,* 580 F.2d 774, 781 (5th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978) (repetitious conduct); *United States v. Daniels,* 617 F.2d at 149. The Stones' method of recording their income was obviously inadequate. *United States v. Skalicky,* 615 F.2d 1117, 1120 (5th Cir.), *cert. denied,* 449 U.S. 832, 101 S.Ct. 100, 66 L.Ed.2d 37 (1980). We hold that the evidence is sufficient under the *Bell* standard.

■ The defense contends that, even if the evidence is sufficient to convict John Stone, the evidence is still insufficient to convict Shirley Stone. In evaluating this question, we note once again the standard for evaluating the sufficiency of the evidence. All reasonable inferences and credibility choices are viewed in favor of the jury's verdict. *United States v. Daniels,* 617 F.2d at 149. The evidence is sufficient if a reasonable trier of fact could find guilt beyond a reasonable doubt. *United States v. Bell, supra.* With this standard in mind, we decline to disturb the jury's verdict as to Shirley Stone. Shirley Stone participated in the farming operation. She paid out business expenses, signed checks from the Hastings bank account, prepared invoices, and made some deposits of income into the banks. Shirley Stone helped prepare the summary sheets used by the accountant who prepared the Stones' income tax returns, though it is not perfectly clear whether her assistance went beyond typing the summary sheets. According to Shirley Stone's own testimony, she placed all of the checks, deposit books and other records into grocery bags and marked the years from which those records were taken from. Record, vol. 7, at 688. Although she said that she could not recall ever putting those deposit slips that Thomas had taken care of into the grocery bags, she admitted that they were in the grocery bags that she handled. Moreover, Shirley Stone used deposit slips which, the evidence suggests, came from the deposit book used by Thomas. Record, vol. 7, at 719. To overturn Shirley Stone's conviction, we would have to second guess the jury and make those credibility choices which are foreclosed from our view. We therefore hold that the evidence was sufficient to convict her.

## II. JURY PREJUDICE

■ Appellants argue that the jury was prejudiced by several questions and comments the prosecutors made about the Stones' financial circumstances. We find that this request for reversal based on jury prejudice and improper prosecutorial conduct is without merit.

Appellants suggest that the prosecutor exploited prejudice among the jurors which already existed. The appellants describe the low to low-middle income backgrounds of the jurors who were selected to decide the case. Appellants' argument falls far short of showing actual prejudice.

---

3. Aside from the farm income, the government presented evidence on the Stones' failure to report interest income. The Stones concede that their 1974 tax return omitted $9,400 in interest income. According to the Stones, this omission was inadvertent, and this inadvertence is shown by their reporting the $9,400 as interest income in their 1975 tax return. Thus, the Stones argue, they were not willfully evading income tax. According to the government, the 1975 tax return did not include the $9,400, itemized as interest income. The defense counters that while it was not itemized, it was included in the lump sum figure of income. The government also presented evidence of the Stones' failure to report capital gains in their 1974 tax return. The Stones again contend that this failure was not willful.

Nor do appellants provide any basis for us to presume jury prejudice. Appellants cite the prosecutor's comments describing the amount of money involved and the size of the farm. Our review of the record convinces us that the prosecutor's comments simply do not warrant reversal. *See United States v. Falk,* 605 F.2d 1005, 1012 (7th Cir.1979), *cert. denied,* 445 U.S. 903, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980).

In any event, the district court delivered several jury instructions which must be taken to have mitigated any prejudice that might have existed. First, the district judge instructed the jury that it was their "duty to base [their] verdict solely upon the testimony and evidence in the case, without prejudice or sympathy." Record, vol. 7, at 1012. Then, the court instructed the jury that "it is your duty to determine the facts, and in so doing you must consider only the evidence I have admitted in the case. The term 'evidence' includes the sworn testimony of the witnesses and the exhibits admitted in the record." *Id.* at 1013. Finally, the district court said

> Remember that any statements, objections, or arguments made by the lawyers are not evidence in the case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing to call your attention to certain facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you.

*Id.* at 1013–14.

### III. JURY INSTRUCTION ON THE ELEMENTS OF § 7201

■ Appellants contend that the district court failed to instruct the jury on an element of the § 7201 offenses. Section 7201 consists of three basic elements: willfulness, the existence of a tax deficiency, and "an affirmative act constituting an evasion or attempted evasion of the tax." *Sansone v. United States,* 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); *Spies v.*

*United States,* 317 U.S. at 498–99, 63 S.Ct. at 367–68. Appellants argue that the district court failed to instruct on the third element—"an affirmative act." We disagree.

After quoting from § 7201, the district court described the gist of the offense as "a willful attempt . . . to evade." Record, vol. 7, at 1019. While it is true that the district court then described the government's burden in terms of two elements, the district court's rendition of the second element included the elements of both willfulness and an affirmative act. More specifically, the district court described the second element as the defendant's knowing and willful attempt to evade or defeat tax. *Id.* One sentence later the court defined the word attempt:

> The word "attempt" contemplates that the defendant had knowledge and understanding that, during the particular tax year involved, he had income which was taxable, and which he was required by law to report; but that he nevertheless attempted to evade or defeat the tax, or a substantial portion of the tax on that income by willfully failing to report all the income which he knew he had during that year. At the time of the filing of the return, the offense is complete.

*Id.* at 1019–20.

■ Our review of the cases convinces us that these jury instructions comply with the law. First, while it is true that the third element is sometimes described as an affirmative act, it has also been alternatively described as "an attempt to evade or defeat such taxes," without any language specifying that an affirmative act is necessary. *United States v. Dwoskin,* 644 F.2d 418, 419 (5th Cir.1981); *see United States v. Grasso,* 629 F.2d 805, 807 (2d Cir.1980). The instructions given describe the third element in that way. Second, the affirmative act need be nothing more than the filing of a false and fraudulent income tax return. *Sansone v. United States,* 380 U.S. at 352, 85 S.Ct. at 1010 (filing of a false tax return suffices as the affirmative act which consti-

tutes evasion or attempted evasion); *United States v. Buckley,* 586 F.2d 498, 504 (5th Cir.1978), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979); *United States v. Schafer,* 580 F.2d at 782. The instructions given by the district court describe the § 7201 offense as complete with the filing of the return in which the taxpayer willfully failed to report some of his income.[4] All of this shows that the jury instructions delivered by the district court were clearly adequate in defining the elements of § 7201.

## IV. REFUSAL TO GIVE REQUESTED INSTRUCTIONS

 The district court's refusal to deliver appellants' requested instruction constitutes reversible error if and only if the requested instruction (1) is correct, (2) is not substantially covered by other instructions which were delivered, and (3) deals with some point in the trial so "vital" that the failure to give the requested instruction seriously impaired the defendants' ability to defend. *Pine v. United States,* 135 F.2d 353, 355 (5th Cir.), *cert. denied,* 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 439 (1943). *See United States v. Hitsman,* 604 F.2d 443, 447 (5th Cir.1979); *United States v. Milstead,* 671 F.2d 950, 952 (5th Cir.1982) (per curiam). Appellants' requested instruction number 11 said "You are charged that negligence, even gross negligence, does not amount to willfulness." This instruction was substantially covered by other instructions which were delivered by the district court.[5] *See United States v. Hitsman, supra.* We hold that the refusal to give de-

fendants' requested instruction on negligence was not error.[6]

## V. ADMISSIBILITY OF EVIDENCE

Appellants claim that the district court committed reversible error in two rulings on admissibility of evidence. First, appellants point to the court's excluding an affidavit of the Stone's income tax return preparer, Glenn Stephens. Second, appellants point to the court's admitting their 1976 income tax return. After reviewing the record, we have concluded that the district court did not abuse its discretion in either ruling.

 The facts surrounding the affidavit can be summarized briefly. The Stones claim that $9,400 in interest income which was omitted from their 1974 tax return was later included in a lump sum figure of income in their 1975 tax return. In his testimony, Stephens indicated that he did not lump interest income, farm income, and dividend income together in preparing the tax returns. Record, vol. 6, at 333–34. But in his affidavit, Stephens had said that he "simply totalled many of the items together to reflect total income rather than break down into chemicals, potatoes, grain, interest and other categories." Defendants' Exhibit G. During cross-examination, defense counsel presented Stephens with this affidavit to refresh his recollection. After looking at the affidavit, Stephens said that the interest was not lumped together in total income like the other items. In other words, he indicated that the affidavit was wrong. Record, vol. 6, at 344. Defense counsel presumably sought to intro-

---

4. Moreover, the two elements of affirmative act and willfulness are related, and evidence which goes to prove willfulness may also go to the question of doing an affirmative act. *United States v. Calles,* 482 F.2d 1155, 1159 (5th Cir.1973); *United States v. Callahan,* 588 F.2d 1078, 1081 (5th Cir.1979).

5. In the jury charge, the district court said: The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.

The word "willfully," as that term has been used from time to time in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose, either to disobey or disregard the law. You are charged that willfulness means the voluntary, intentional violation of a known legal duty.
Record, vol. 7, at 1020.

6. We hold that it was not error to refuse to give appellants' requested instruction number 16, which concerned the Stones' dealer status.

duce the affidavit into evidence under Fed. R.Evid. 801(d)(1)(A).[7]

Trial judges have broad discretion to determine the admissibility of such evidence and they will only be reversed if they have abused that discretion. *See United States v. Leach,* 613 F.2d 1295, 1305 (5th Cir.1980). There was no abuse of discretion here. Defense counsel did not clearly explain why Stephens' testimony was inconsistent with the affidavit. After all, Stephens looked at the affidavit and suggested simply that it inaccurately stated that interest was lumped together with other items of income. *See United States v. Leach,* 613 F.2d at 1305. In addition, the essential fact, the affidavit's statement that interest was lumped together with other items of income, was before the jury. *United States v. Ashley,* 555 F.2d 462, 465 (5th Cir.), *cert. denied,* 434 U.S. 869, 98 S.Ct. 210, 54 L.Ed.2d 147 (1977). Significantly, before issuing its ruling on excluding the affidavit from evidence, the district court gave defense counsel an opportunity to show that Stephens' testimony was inconsistent with the affidavit's statement, but defense counsel failed to explain why the affidavit should be admitted into evidence. Record, vol. 7, at 889. The district court's ruling does not constitute an abuse of discretion.

 With respect to the district court's ruling admitting the Stones' 1976 tax return, appellants argue that it is barely relevant and highly prejudicial. In determining the relevancy of evidence, the trial judge has broad discretion. *United States v. Clemons,* 676 F.2d 124, 125 (5th Cir.1982); *United States v. Colson,* 662 F.2d 1389, 1392 (11th Cir.1981). Whether evidence should be excluded because it is prejudicial even though it is relevant is also within the trial court's discretion. *United States v. Sonntag,* 684 F.2d 781, 788 (11th Cir.1982); *United States v. Thevis,* 665 F.2d 616, 634 (5th Cir.1982) (Unit B), *cert. de-*

*nied,* —— U.S. ——, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982), —— U.S. ——, 102 S.Ct. 3489, 73 L.Ed.2d 1370 (1982) & —— U.S. ——, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). Indeed, "Rule 403 is an extraordinary remedy which should be used sparingly." *Id.* at 633. We have reviewed the record, and it is clear that the district court did not abuse its discretion by admitting the 1976 tax return into evidence.

## VI. SENTENCING

 Appellants contend that the § 7206(1) offenses are lesser-included offenses of the § 7201 offenses. The government agrees that in this particular case the § 7206(1) offenses are lesser-included. The dispute centers on what constitutes the proper remedy in this situation. We have decided to remand with instructions for the district court to vacate the conviction and sentence of either Count I (the 1974 year greater offense) or Count II (the 1974 year lesser-included offense) and to vacate the conviction and sentence of either Count III (the 1975 year greater offense) or Count IV (the 1975 year lesser-included offense).

Our decision, permitting the district court to exercise its discretion in determining which conviction and sentence to vacate, is supported by precedent. *United States v. Larson,* 625 F.2d 67, 69 (5th Cir.1980); *see United States v. Wiga,* 662 F.2d 1325, 1335 (9th Cir.1981); *United States v. Ivy,* 644 F.2d 479, 480 (5th Cir.1981) (Unit A). It is true that some cases have said that "[t]he proper remedy for convictions on both greater and lesser offenses is to vacate both the conviction and the sentence of the *lesser-included offense.*" *United States v. Michel,* 588 F.2d 986, 1001 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979) (emphasis added); *United States v. Buckley,* 586 F.2d 498, 505 (5th Cir.1978), *cert. denied,* 440 U.S. 982, 99 S.Ct.

---

**7.** Rule 801(d)(1)(A) provides:

(d) Statements which are not hearsay. A statement is not hearsay if—

(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition[.]

1792, 60 L.Ed.2d 242 (1979).[8] It is apparent from a reading of these decisions, however, that the question whether the district court should have discretion to elect which conviction to vacate on remand was not before the court. *Michel's* language, quoted above, was in turn taken from *Buckley*. In *Buckley,* it is clear that the language on what remedy is proper is addressed to the question whether the court of appeals should vacate the sentence while leaving intact the conviction on the lesser offense. *See United States v. Buckley,* 586 F.2d at 504–05. In none of these cases is there any indication that the government sought a remand to permit the district court to exercise discretion in selecting which conviction to vacate. Nor would the government have had any reason to seek a remand in those cases since the effect of the appellate court's action in vacating the lesser included offenses was to vacate the lesser sentences. *See United States v. Michel,* 588 F.2d at 991 n. 5; *United States v. Buckley,* 586 F.2d at 504. By contrast, in John Stone's case, the only prison term which was not suspended was imposed on the 1975 lesser-included offense. Thus, we think a remand is appropriate.

Further, we note that it is unclear whether the convictions on all four counts, for both the greater and lesser offenses, improperly led the district court to impose harsher sentences. *Cf. United States v. Michel,* 588 F.2d at 1001; *United States v. Buckley,* 586 F.2d at 505. We therefore remand; if the district court did impose harsher sentences than would have been imposed had it realized the impropriety of sentencing on both the § 7201 counts and the § 7206(1) lesser-included offenses, then it should on remand decrease the remaining sentences accordingly.[9]

For the foregoing reasons, we remand with instructions for the district court to vacate the conviction and sentence for either Count I (the 1974 year greater offense) or Count II (the 1974 year lesser-included offense) and to vacate the conviction and sentence for either Count III (the 1975 year greater offense) or Count IV (the 1975 year lesser-included offense).

---

8. *See also United States v. Newman,* 468 F.2d 791, 796 (5th Cir.1972), *cert. denied,* 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973).

9. Of course, the trial judge may not increase the sentence for the conviction that is left intact. *United States v. Larson,* 625 F.2d at 69.