[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11822
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cr-20744-JEM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RONNIE JUNIOR RODRIGUEZ,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 24, 2018)

Before TJOFLAT, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Ronnie Junior Rodriguez appeals his conviction for being a felon in

possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  He argues the

district court's denial of his motions to continue his jury trial and to suppress evidence as "untimely" violated his due process rights by depriving him of an adequate opportunity to prepare his case and present his defense. He also argues the district court's evidentiary rulings limiting his ability to cross-examine the government's witnesses and excluding impeachment evidence about those witnesses deprived him of his right to a fair trial. After careful review, we affirm.

## I.    BACKGROUND

### A.    PRETRIAL MOTIONS

Rodriguez was charged with the § 922(g)(1) violation on September 29, 2016. Due to his indigent status, he was appointed a federal public defender. The court set the pretrial motions deadline for January 23, 2017, and trial for February 6, 2017. On January 4, 2017, Rodriguez filed a pro se motion to suppress evidence. The court struck the pro se motion two days later because Rodriguez was represented by counsel. Rodriguez moved to represent himself on January 23, 2017. The district court referred the motion to a magistrate judge.

The magistrate judge held a hearing on the motion on January 30, 2017, seven days before trial. The magistrate judge explained that Rodriguez's request to represent himself was a "very bad idea" and that, if granted, he "would not be able to later on challenge what happened at the trial or at sentencing based on the fact that [he] represented [himself]." The magistrate judge also explained trial-related

2

consequences of Rodriguez's request to represent himself, including that he wouldn't be given "any special breaks or advantages as a result of [] being pro se"; that his failure to object may mean evidence comes in that otherwise wouldn't; and that even if he objects, his failure to base the objection on a proper rule of evidence means he "could lose an objection that [he] might otherwise win on."  When asked why he wanted to represent himself despite advice to the contrary, Rodriguez answered, "Practically, sir, nobody is going to face the time and sit back there but me, so why would I care what anybody thinks?  I'm the one doing the time, sir.  It's my life at risk, so why can't I represent my own life?"

Rodriguez also asked that the trial be continued.  The magistrate judge said that request would have to be made to the district court judge.  The magistrate judge twice warned Rodriguez that if his request to proceed pro se was granted, "you might suddenly have to go to trial a lot quicker than you wanted to and perhaps . . . without enough time to do further investigation and further preparation" and that the district court judge "perhaps will not be continuing any deadlines."  Rodriguez twice agreed that he "underst[ood] and accept[ed] those risks."

The magistrate judge granted Rodriguez's request to represent himself.  The judge also permitted Rodriguez's appointed counsel to act as standby counsel during trial, but told Rodriguez that "the filings, the motions will come from you

and you alone." Before the hearing ended, the magistrate judge repeated that any continuance requests would have to be raised by Rodriguez to the district court judge. The next day Rodriguez mailed his renewed motion to suppress.

On February 2, 2017, the district court held a calendar call. Rodriguez presented his motion for a continuance, which the court denied. The court told Rodriguez that it wasn't going to grant him a continuance just because he "got in late." However, the court would consider it if Rodriguez could "articulate specific things that you want to do and specific reasons why you haven't been able to do it and you can do that by the close of business tomorrow." When Rodriguez asked how to get a motion to the court, his standby counsel offered to pick it up from him the next morning and file it with the court in the afternoon. Moving on to trial procedure, the district court explained to Rodriguez that his pro se status "does not mean that the [Federal] Rules of Evidence do not apply to you." Although Rodriguez could ask his standby counsel for help, "it's your case. You are representing yourself." Rodriguez did not mention his motion to suppress during the calendar call.

The district court received Rodriguez's motion to suppress on February 6, 2017, which was also the first day of trial. It was docketed at 3:44 PM. The district court asked Rodriguez what he wanted to suppress. Rodriguez answered, "The firearm . . . because it's the only thing, it's the case basically." The court

denied the motion.  The court said that the firearm had already been introduced into evidence earlier that day without objection from Rodriguez.  It also noted that Rodriguez had not mentioned the motion to suppress to the court, and thus the motion was untimely.  Finally, the court determined that there wasn't a basis for suppressing the firearm "even assuming all of these things" Rodriguez said in his motion.

B.    TRIAL

Miami police officer Handerson Damier testified at trial to the following. On February 19, 2016, Officers Damier, Pierre Chery, and Josterly Mitael were responding to an unrelated Crime Stoppers tip when Officer Damier saw two men fighting in an empty lot.  Officer Chery pulled into the lot, and Officer Damier got out of the car, saying, "Miami police, stop."  As he was doing so, he saw Rodriguez take off running, pull out a gun, and toss it over a wooden fence. Officer Damier turned on his body camera and ran after him.  During the chase, he saw Rodriguez take things out of his pockets and throw them over a chain-link fence.  After Rodriguez was caught, he said to the officers, "Set me up, huh? Entrapment.  It's entrapment."  The officers then retrieved the gun and the things Officer Damier had seen Rodriguez toss, which turned out to be marijuana and some money.

Officer Chery testified as well.  He said that he saw Rodriguez holding a gun to the other man's head when he drove the police car into the lot.  On cross-examination, Rodriguez attempted to show that this contradicted Officer Chery's testimony in a deposition related to a state charge against Rodriguez.  Twice Officer Chery said he didn't remember giving the deposition and twice the district court told Rodriguez to "[m]ove on."  With the help of standby counsel, Rodriguez gave the deposition transcript to Officer Chery and asked him if it refreshed his recollection.  Officer Chery answered no and the district court told Rodriguez to "[m]ove on."  When Rodriguez accused Officer Chery of lying based on his state-court deposition, the district court told Rodriguez that he couldn't just say that, but "ha[d] to prove it."  Rodriguez then tried to get the deposition transcript admitted into evidence.  The prosecutor objected on hearsay grounds.  The court told Rodriguez to ask his standby counsel later to "find out if you can do it, how to do it."  Rodriguez finished his cross-examination of Officer Chery, but did not move to admit the deposition into evidence again.  Later, when asked whether it was being offered into evidence, standby counsel said no.

Angel Rodriguez ("Angel"), the man Rodriguez had been seen fighting with, also testified.  Before he did, the government moved to exclude Facebook pictures showing Angel with guns as unduly prejudicial and irrelevant.  Standby counsel sought to admit them under Federal Rule of Evidence 404(b)(2), arguing Angel's

6

prior ownership of guns showed he had the "intent, opportunity, ability" to have possessed the gun found behind the wooden fence.  In light of the photos' prejudicial nature, the district court excluded them but said they could be introduced as impeachment evidence if Angel denied owning guns.  Standby counsel offered the photos into evidence after Angel's testimony, but the district court again excluded them.

Angel testified he was at a store, already having taken one or two Xanax and looking to buy a "Dutch" to use to smoke marijuana, when he was approached by Rodriguez.  Rodriguez asked if he wanted to smoke weed, and Angel said yes.  The two left the store and walked a block to a "little field."  There, Rodriguez pointed a gun at Angel and demanded his money.  After Angel handed over his money, police pulled up, and Rodriguez ran and threw the gun over the wooden fence.  Angel was interviewed by the officers and said he told them the "same story."  However, he did not remember being questioned by detectives after that day or participating in a recorded interview.  On cross-examination, Angel admitted to prior convictions for burglary and strong arm robbery, and that he was currently in jail for another burglary.  He admitted owning guns when he was younger and posting photos of himself with guns on Facebook.  When asked again whether he remembered being interviewed after February 19th, he said no.  However, Angel did remember telling law enforcement on April 15, 2016 that he

7

was "incoherent" on February 19th and "had no recollection of what occurred" that day. The district court sustained the government's objection to the playing of a video showing Angel making that statement because Angel had "already said that."

The jury found Rodriguez guilty. He was sentenced to 120 months in prison. This appeal followed.

## II.    MOTIONS TO CONTINUE AND TO SUPPRESS

Although "[t]he matter of [a] continuance is traditionally within the discretion of the trial judge," a denial may in some circumstances interfere with or undermine a defendant's right to counsel and to defend against the charge. Ungar v. Sarafite, 376 U.S. 575, 589, 84 S. Ct. 841, 849–50 (1964). Whether a denial is "so arbitrary as to violate due process" depends on the surrounding circumstances, "particularly in the reasons presented to the trial judge at the time the request is denied." Id. at 589, 84 S. Ct. at 850. Thus, "[t]o prevail on such a claim, a defendant must show that the denial of the motion for continuance was an abuse of discretion which resulted in specific substantial prejudice." United States v. Verderame, 51 F.3d 249, 251 (11th Cir. 1995).

Rodriguez argues that the district court's denial of his continuance request was an abuse of discretion because it effectively denied him a hearing on his motion to suppress. However, Rodriguez never mentioned the motion to suppress at the calendar call. And although the district court gave Rodriguez a one-day

extension to give his reasons for requesting a continuance, Rodriguez never made any such request.  As the district court said when the motion to suppress was finally presented, "How can I deal with [a motion] if I don't know about [it]?" Beyond that, when the government offered the gun into evidence, Rodriguez said, without prompting, "No objection, Your Honor."

The motion to suppress was not timely, and the district court did not abuse its discretion in denying the continuance.[1]  See Ungar, 376 U.S. at 589, 84 S. Ct. at 849–50; Verderame, 51 F.3d at 251.

## III.   EVIDENTIARY RULINGS

A district court has "discretionary authority to rule on the admissibility of evidence, including the power to limit cross-examination."  United States v. Garcia, 13 F.3d 1464, 1468 (11th Cir. 1994).  However, this discretion is limited by the defendant's right "to be confronted with the witnesses against him," U.S. Const. amend. VI, and "to be heard" and "to offer evidence of his own," Specht v. Patterson, 386 U.S. 605, 610, 87 S. Ct. 1209, 1212 (1967).  "In particular, cross-examination of a government 'star' witness is important, and a presumption favors free cross-examination on possible bias, motive, ability to perceive and remember,

---

[1] To the extent Rodriguez claims the denial of a continuance violated his due process rights because it denied him adequate preparation time "for the filing of other pretrial motions and to review the paperwork," this is the same vague request he made to the district court at calendar call.  The district court granted Rodriguez time to explain his reasons in more detail, and Rodriguez failed to do so.  Thus, the court did not abuse its discretion in denying a continuance on this basis either.  See Ungar, 376 U.S. at 589, 84 S. Ct. at 850.

9

and general character for truthfulness." United States v. Maxwell, 579 F.3d 1282, 1295–96 (11th Cir. 2009) (quotation omitted and alteration adopted).

That being said, "the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Kentucky v. Stincer, 482 U.S. 730, 739, 107 S. Ct. 2658, 2664 (1987) (quotation and emphasis omitted); see Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986) ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant."). And even an erroneous exclusion of evidence doesn't warrant reversal if the "error was harmless beyond a reasonable doubt." United States v. Hurn, 368 F.3d 1359, 1362–63 (11th Cir. 2004) (quoting Chapman v. California, 368 U.S. 18, 24, 87 S. Ct. 824, 828 (1967)). When a defendant gets the "essence of the desired [evidence] before the jury," his compulsory due process rights have not been prejudiced. United States v. Buckley, 586 F.2d 498, 503 (5th Cir. 1978).[2]

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

10

Rodriguez argues the district court's exclusion of Angel's recorded interview, the Facebook gun pictures, and Officer Chery's deposition transcript, as well as the court's limitations on Angel's and Officer Chery's cross-examinations, deprived him of his right to a fair trial. We disagree.

First, there was no compulsory due process violation in the exclusion of the deposition transcript. The district court later offered Rodriguez an opportunity to renew his request to admit the deposition into evidence and his standby counsel declined it. Second, even assuming it was error to exclude the recorded interview or the gun pictures, it was harmless since Rodriguez got the essence of his desired evidence before the jury. See id. Angel admitted to owning guns, to posting photos on Facebook of himself with guns, and to telling detectives on April 15, 2016 that he was "incoherent" on February 19th and "had no recollection of what occurred" that day.

Third, the district court did not abuse its discretion with respect to limitations on Angel's and Officer Chery's cross-examinations. See Maxwell, 579 F.3d at 1296 (reviewing a claim of improper limitations on cross-examination for abuse of discretion). To begin, other than the district court's refusal to admit Angel's recorded interview or his gun pictures, which we have already said was harmless, there is nothing in the record indicating a limitation on Angel's cross-examination. As to Officer Chery, the district court's instructions to Rodriguez to

11

"[m]ove on" after Officer Chery twice said he didn't remember giving a deposition did not impermissibly limit the cross-examination because the court also allowed Rodriguez to try to refresh Officer Chery's recollection.  Similarly, the third "[m]ove on" instruction also wasn't an abuse of discretion because the district court explained to Rodriguez that he couldn't just accuse Officer Chery of perjury, but had to prove it, and gave him an opportunity to put the deposition in evidence. The record shows the court was trying to ensure that the testimony was taken in accord with the Federal Rules of Evidence and to minimize delay.  This was comfortably within the district court's discretion.  See Kentucky, 482 U.S. at 739, 107 S. Ct. at 2664; Delaware, 475 U.S. at 679, 106 S. Ct. at 1435.

 **AFFIRMED.**