[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 4, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14298
Non-Argument Calendar

_____

D. C. Docket No. 05-00169-CR-ORL-19-JGG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD H. MACLEAN, JR.,
MARY ANN MACLEAN,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(June 4, 2007)**

Before BIRCH, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Richard H. MacLean, Jr., ("MacLean") and Mary Ann MacLean ("Mary Ann") (collectively referred to as "the MacLeans") appeal their convictions for tax evasion under 26 U.S.C. § 7201. Upon review, we conclude: (1) the district court did not abuse its discretion by admitting evidence of MacLean's prior conviction under Rule 404(b) of the Federal Rules of Evidence, because the conviction was relevant to his intent and was not unduly prejudicial; (2) the district court correctly denied the MacLeans' motion for judgment of acquittal, because a formal assessment is not a requirement of establishing tax evasion and there was sufficient evidence of the MacLeans' income tax deficit and affirmative acts of evasion; and (3) it was not plain error for the district court to fail to find that the Internal Revenue Code, or parts of it, was unconstitutionally vague. For these reasons, we AFFIRM the MacLeans' convictions.

## I. BACKGROUND

The MacLeans were jointly indicted on five counts of evading income tax on the income they earned in the 1999, 2000, 2001, 2002, and 2003 tax years, in violation of 26 U.S.C. § 7201. In every count, the indictment charged that the MacLeans had

> utiliz[ed] a bogus trust for the purpose of concealing the ownership of the income; [made] withdrawals from the trust in the form of checks to cash; [paid] all personal living expenses by cash or money orders; titl[ed] personal assets in the names of bogus nominee trusts to

2

conceal the ownership of the assets; and endors[ed] checks using the language "Foreign Trust Proceeds" to conceal the source of their income and assets.

R1-1 at 1-2.

Prior to trial, the government filed a motion in limine, explaining that it expected the MacLeans to assert a number of "tax protestor" arguments–including the argument that an assessment by the Internal Revenue Service ("IRS") was a condition precedent to prosecuting criminal tax charges, and asking the court to order the MacLeans and any defense witnesses not to mention or allude to or submit evidence regarding any of these arguments. The MacLeans filed a motion in response and opposition to the government's motion in limine. The MacLeans stipulated that they would not raise a number of the arguments cited by the government.

In an order entered directly into the docket, the court deferred ruling on the government's motion in part, and denied the motion as moot with regard to the arguments the MacLeans had agreed to abstain from raising. The court granted the government's motion with regard to the MacLeans' argument that an assessment was a condition precedent to tax evasion, a proposition which the court rejected.

The MacLeans then filed a motion in limine, arising from certain convictions of MacLean and others who had coached an adult daughter, Kristina

3

MacLean, regarding what to say in her testimony to the grand jury.  The MacLeans indicated that their appeal of these convictions and sentences was pending.[1]  They also argued that these convictions were not relevant and did not fall under one of the permitted uses under Federal Rule of Evidence 404(b).  Further, they contended that any probative value of this evidence was outweighed by the prejudice it would cause.

At trial, the government presented 14 different witnesses and submitted numerous documents into evidence.  Gloria Jackson, an investigator for the IRS, testified that, according to IRS records, the MacLeans filed no tax returns in any year from 1993 through 2003, and the IRS sent the MacLeans tax delinquency notices.

Jeffrey Sailor was a friend of the MacLeans for many years and was their accountant.  R12 at 90, 92.  Sailor testified that while he had prepared tax returns for them, he had stopped doing so in the early 1990s because MacLean had told him "that he was essentially not planning on filing, because he didn't feel that he had a reason to."  Id. at 96.  He explained that MacLean told him "that he did not have a legal responsibility to file income taxes due to certain aspects of the code never being ratified . . . that most people [were] not privy to that knowledge, and

_____

[1] We have since affirmed these convictions.  United States v. Baker, No. 05-10994 (May 15, 2006).

4

that he had become aware of that knowledge, and with that now he knew that he did not need to file anymore." Id. at 98. Sailor told MacLean that he did not agree with this theory, and that he needed to file tax returns, but MacLean told him he was wrong.

Three different witnesses testified that they had sold cars to the one of the MacLeans. The first witness testified that in 2001 May Ann MacLean had paid $23,700 cash from a trust for a Buick Park Avenue. Notably, on the forms associated with the transaction, the purchaser listed three different names and addresses. The vehicle was ultimately titled in the name of "SY number one holding trust." Id. at 111. The witness testified that the driver's license Mary Ann produced as identification had an address different from any on the forms. He also testified that she refused to give him her social security number.

The second such witness testified that in 2001 Mary Ann purchased an Infiniti G20 for $20,576.58 in cash, and that the vehicle was titled to "SY holding number 3 holding trust." R13 at 69-70. Finally, a third witness testified that in 2000 MacLean purchased a 1998 Ford Expedition for $26,822.08 in cash. Although at one point the vehicle was to be titled in MacLean's name, it was ultimately titled to "SY number one holding trust." Id. at 80-81. Notably, the witness testified that when he told MacLean that he was going to deposit the cash,

5

MacLean told the witness not to deposit more than $10,000 at once in order to avoid attracting attention, and the witness testified that he complied with this advice.

A State Farm insurance agent testified that MacLean was his client. He testified that MacLean insured three vehicles with State Farm, though he could not remember what kind of vehicles they were. He did not remember MacLean ever telling him that "the ownership of these cars was in a trust." Id. at 61. Finally, he testified that his records seemed to show that MacLean had paid with a check or money order.

Another witness testified that she had leased a house to the MacLeans during this period, and they had always paid with a money order or with cash. She also testified that the MacLeans used a general delivery address for their mailings from her.

Bobbi Joyce, a vice president assistant banking center manager with Bank of America, testified that MacLean was a frequent customer of hers for an account he had in the name of Apente Management Group. She testified that their records showed MacLean and Richard Allen Shiarla as signatories to the account, and that MacLean was the company's managing director. She testified that she had never met Shiarla. Reading from documentary records, she testified that MacLean

6

endorsed checks that he deposited into the account with the words "foreign trust proceeds per Title 26, USC/IRC 7701[(a)(31)] without prejudice, without recourse." Id. at 43. She also testified that the address on the account changed from an address in the British West Indies to an address in Florida. She testified that it appeared that all of the checks MacLean wrote on the account were checks for cash that he drew at the bank. Finally, she testified that after the MacLeans tried to have Mary MacLean added to the account, the bank's legal department determined that the account was improper and closed it.

Brenda Horton testified that she had worked as a bookkeeper for a Dr. Milton Mcllwain during a period when the MacLeans also worked for him. She testified that for a time, Mary Ann's paychecks were made out to Richard MacLean, and that later, they were made out to Apente Management Group. She testified that the MacLeans worked for Dr. Mcllwain as independent contractors, and that Mary Ann had told her this was "because they were not using their social security numbers." Id. at 106-08. She also testified that the cancelled paychecks bore an endorsement, and that Mary Ann told her the endorsement allowed them to cash the checks through the Apente Management Group and "very honestly" told her that this was done "in avoidance of taxes." Id. at 114-15.

7

By way of a stipulation read into evidence, Richard Allen Shiarla stated that he met the MacLeans in the 1990s and that he "created Apente Management Group as a foreign trust and had a mailing address in Charlestown Nevis, British West Indies." Id. at 117. He stated that he created a number of documents creating a trust, sold the documents to MacLean, and was present at a meeting where MacLean was made the managing director of the Apente Management Group trust. Further, he stated that he and MacLean opened a bank account for the Apente Management Group.

Dr. McIlwain testified that he had been included in the trust creation documents drafted by Shiarla, but that he never received anything from the trust, and that he understood the trust to have been created to help the MacLeans avoid paying taxes. He testified that while he couldn't remember, he assumed the checks he wrote to Apente Management Group were for the services proved by the MacLeans.

A bank teller testified that MacLean regularly made deposits and cashed checks–written "from the business itself"–from the Apente Management Group bank account. Id. at 154-55. When she questioned MacLean about the "weird" endorsement on the back of the checks he deposited, he told her "it had something to do with him being a [N]ative American, which [she] assumed meant . . . he was

8

either of Indian descent or someone who was from Alaska, that type thing." Id. at 156.

Bruce Baker testified that he had employed the MacLeans at his electronics company, and that their paychecks were made out to Apente Management Group. He also testified that he had been convicted of failing to file a tax return and sentenced to two years' imprisonment. He testified that he had "consulted" with MacLean regarding the issues in his tax trial in 2002 both before and during the trial.

Scott Emerson, the trust technical advisor for the IRS who was qualified to give expert testimony with regard to trust taxation, testified that the Apente Management Group documents in evidence showed that a trust was established and then the Apente Management Group was hired to manage the trust and MacLean was made the trustee. R14 at 30-31. Emerson testified that in his opinion this trust was "a sham trust or at best a grantor trust" (which the IRS would ignore for taxation purposes). Id. at 30-32. Whether a sham or a grantor trust, the income "would be taxed to the individual." Id. at 34. Emerson also testified that one of the documents' use of the term "declaration of a pure contract trust organization" was a particular kind of sham that he had seen before and that was normally used to evade taxes or hide assets. Id. He also opined that the trust was not a foreign

trust, because it had a beneficiary in the United States and the United States courts would have jurisdiction over it. Reviewing additional documents in evidence, Emerson testified that the trust in question had never filed any of the appropriate forms with the IRS to report its income.

Robert Combs, a revenue agent for the IRS who was qualified to give expert testimony regarding "the computation of gross and adjusted gross income, taxable income and tax liability, including the liability for filing a federal income tax return," id. at 53, testified that, after having observed the entire trial up to that point, and having examined all of the documents in evidence, he had computed the MacLeans' taxable income for the tax years 1999 through 2003. He testified that they had the following taxable income: (1) in 1999, $77,884.32; (2) in 2000, $111,318.91; (3) in 2001,$128,356.17; (4) in 2002, $95,928.095; and (5) in 2003, $92,878.38. Based on this same calculation, Combs testified that the MacLeans owed taxes in the following amounts: (1) in 2000, $25,630; (2) in 2001, $29,630; (3) in 2002, $19,696; and (4) in 2003, $16,839.[2] He testified that the MacLeans had withdrawn close to $600,000 from the trust between 1999 and 2003, and that this was attributable to them as taxable income.

---

[2] Combs omitted the tax liability for 1999, though the transcript suggests it was visible to the jury in a chart he had prepared that was displayed during his testimony.

Harry Joseph Brister, an IRS special agent, testified that when he went to serve subpoenas on the MacLeans, MacLean told Brister that "he did not have anything to do with [Apente Management Group]." Id. at 99-100.

At various points during the trial, the parties and the court discussed the admission of MacLean's prior conviction. At the beginning of the third day of the trial, the court found that intent was an issue raised by the MacLeans and that the government's case was not "strong" on the issue of intent. R14 at 4. The court then found that the conviction for obstruction was evidence of intent, and "although [it] could not find any case that allow[ed] a conviction in[to evidence] without a [Rule 404(b)] analysis . . . [it did] not think a [Rule 404(b)] analysis [was] appropriate, mainly because the extrinsic act and conviction and charged offenses are two different offenses." Id. at 5. The court then stated:

> So, I don't know that a [Rule 404(b)] analysis is the correct analysis here. The appellate court may disagree, but that's just how I feel about it. I do feel that this shows intent from the government's point of view and that under the balancing test it would survive the [Rule] 403 objection that was made by [MacLean's counsel] at the beginning of the case.

Id. at 5-6. The court then asked counsel to develop a limiting instruction, particularly noting that it was looking to an instruction used in another case. After further discussion regarding laying a foundation for the evidence, the parties agreed to admit the conviction by way of a stipulation.

11

Later that day, the court made the following statement to the jury:

Ladies and gentlemen, Government's Exhibit 12 is being admitted over objection. And I have ruled on this out of the presence of the jury. It consists of a conviction as to [MacLean].

Here is a stipulation of the parties as to this document that I'm going to read to you, so this can be taken as evidence without proof. And after I read this stipulation of the parties as to Exhibit 12, I'm going to give you a limiting instruction. That means that you must consider this evidence in accordance with the limiting instruction I am giving you, so first let me read the stipulation of the parties.

The conviction in Government's Exhibit 12 relates to actions taken by [MacLean] during the course of the investigation by a grand jury of [the MacLeans'] income taxes. That investigation led to the indictment in this case. The conviction in Exhibit 12 is presently being appealed.

Id. at 101-02. At the government's request, the court then read each count of the judgment into the record, namely, two counts of "obstructing the administration of justice of a federal grand jury," one count of tampering with a witness, and one count of tampering with evidence. Id. at 102. The court then continued:

Now, I want to give you a limiting instruction. The evidence of the conviction, as to [MacLean] in Government's exhibit 12, is admitted only for your consideration of whether it shows that [] MacLean had the intent to commit the offense, income tax evasion, for which he is now on trial.

It is not to be considered by you as evincing bad character or a criminal propensity on his part, but only for the purpose which I have indicated that it was admitted into evidence, namely for your consideration of whether [MacLean] had knowledge of and whether there was illegal activity occurring in connection with the case, which

12

is on trial here before you. This conviction, as to [MacLean], is not to be considered in any way as to [Mary Ann].

Id. at 102-03. The court then asked the parties if they objected to the limiting instruction "or the manner it which [it had] stated it," to which both parties responded that they did not. Id. at 103.

Immediately thereafter, the government rested its case. Out of the presence of the jury, the MacLeans moved for a judgment of acquittal, essentially arguing that the government had failed to establish a willful attempt to evade income taxes by either of the MacLeans, and reasserting its argument that the government was required to show that a formal assessment had been completed for the payment of taxes prior to establishing the evasion of those taxes. After the government offered argument in opposition, the court denied the motion. The court found that "there [was] sufficient evidence viewed in the light most favorable to the government for the matter to be presented to the jury with a standard of beyond [a] reasonable doubt." Id. at 109-10. The court also specifically reaffirmed its early ruling on the issue of the formal assessment.

While half of the jury was being brought back to the jury room after a break, they crossed a hallway where MacLean was also approaching the courtroom, handcuffed with his hands behind his back, and in the presence of two United States marshals. According to the court officer, when he saw the approaching

13

marshals, he motioned to them to stop and then positioned himself to block the jurors' view. One of the marshals also blocked the jurors' view of MacLean, and they could not see his handcuffs. Nevertheless, he explained that the jurors were only "[t]en feet or more" from MacLean. Id. at 203. As a result of this incident, the MacLeans' counsel moved for a mistrial, arguing that seeing MacLean with his hands behind his back, escorted by United States marshals, "clearly prejudic[e]d the jury." Id. at 136. The court denied the motion, stating that it was "completely speculative." Id. at 136-37. Although the court offered to question the jurors individually or give them an instruction, the MacLeans' counsel declined to do anything out of the concern that it would only make the situation worse.

In their defense, the MacLeans presented three witnesses: MacLean and Mary Ann both testified in their own defense, and then the MacLeans called an IRS agent who testified regarding the IRS's document retention policies, pursuant to which it appeared most of the MacLeans' files had been destroyed. On cross-examination, MacLean testified, among other things, that: (1) he had been paid for work he performed; (2) he had not filed a single tax return; and (3) he had not paid any income taxes. He also admitted that he had not filed any tax return for Apente Management Group. When asked if he had told McIlwain that was to avoid taxes,

14

MacLean replied: "[i]f you use the term avoid, yes, I had the right to avoid any taxes I'm not liable for." R14 at 199.

In her direct testimony, Mary Ann testified that her "husband [had been] taken away from [her]." Id. at 254. On cross examination, Mary Ann denied stating that the purpose of their pay arrangement at work was to avoid paying income taxes. She also stated that she had not paid for the vehicles with cash, but with travelers' checks. She stated that she did not work until 1996, and that after that point she relied on her husband, who told her not to file a tax return.

Thereafter, the defense rested, and, out of the presence of the jury, renewed its motion for a judgment of acquittal, reasserting that the evidence was insufficient to convict either of the MacLeans, and also reasserting that the government's failure to prepare formal assessments of the tax years at issue was a basis for a judgment of acquittal. The court denied the motion.

While discussing the jury instructions, the court stated:

> Also, in the analysis on the conviction, I gave you a reference to a case, United States v. Sutton, which contained a [Rule 404(b)] analysis. And I told you that I really didn't feel the [Rule 404(b)] analysis was appropriate in this case. But to the extent it is, I followed the reasoning of that case, and I wanted to make sure that was clear on the record.

R17 at 49. Later, during its instructions to the jury, the court stated:

> Now, as I advised you during the course of the trial, government's Exhibit 12 is a judgment of conviction as to [MacLean] and may be considered by you only as to the issue of intent as to that defendant. It is not to be considered in any way as to [Mary Ann] or for any other purpose. The judgment of conviction is presently the subject of an appeal. Defendants are on trial only for the charges contained in the indictment. They are not on trial for any other charge.

Id. at 104.

After deliberation, the jury found MacLean guilty on all five counts, but found Mary Ann not guilty on one count of income tax evasion (Count 1) and guilty on all four remaining counts. The court later sentenced Mary Ann to 24 months of imprisonment, followed by 2 years of supervised release. The court sentenced MacLean to 33 months of imprisonment, to be served consecutive "by eight months" to his prior undischarged federal sentence, followed by three years of supervised release. R20 at 91-92. The MacLeans timely appealed.

## II. DISCUSSION

A. Whether the district court erred by admitting evidence of MacLean's prior conviction either as intrinsic evidence or under Federal Rule of Evidence 404(b)

The MacLeans argue, first, that MacLean's prior conviction was not relevant to this case. Further, they argue that it did not go toward any of the uses permitted by Federal Rule of Evidence 404(b), such as motive, intent, or knowledge. Even assuming that it did serve one of these uses, the MacLeans argue that it still should not have been admitted, as its probative value was outweighed by the prejudice it

16

caused, especially with regard to Mary Ann. They argue that this harm was aggravated by the jury seeing MacLean in handcuffs in the custody of marshals. They contend that the admission of the evidence, taken with the sight of MacLean in handcuffs, deprived them of a fair trial.

We review properly preserved challenges to the district court's rulings on admission of evidence for an abuse of discretion. United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000) (citation omitted). A court abuses its discretion when its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005) (citation omitted), cert. denied, 126 S. Ct. 1809 (2006).

Federal Rule of Evidence 404(b) specifically bars the admission of "[e]vidence of other crimes, wrongs, or acts" to prove a defendant's character or action in conformity therewith. However, this kind of evidence may be admitted for other purposes, such as to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). If (1) the evidence is relevant to one of these issues, (2) there is "sufficient proof that the defendant committed the prior act, and [(3) the government] can show that the probative value of the evidence is not substantially

17

outweighed by its undue prejudice, and [it] meets the other requirements of [Rule] 403," then evidence of other crimes may be admissible under Rule 404(b). Baker, 432 F.3d at 1205 (citation omitted).

That said, "other crimes evidence may be admissible [free from Rule 404(b) limitations] if it is inextricably intertwined with the evidence regarding the charged offense." United States v. Fortenberry, 971 F.2d 717, 721 (11th Cir. 1992) (citation omitted). "'Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.'" United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998) (quoting United States v. Williford, 764 F.2d 1493, 1499 (11th Cir. 1985)).

Here, although some of the court's analysis suggests that it admitted this evidence outside of Rule 404(b)–in other words, as inextricably intertwined with the charged crime, the court justified its decision, in part, by noting that the "extrinsic act and conviction and charged offenses are two different offenses." R14 at 5. This seems to suggest that the court actually thought the conviction was *not* inextricably intertwined with the charged offense. The court went on to note

18

the weakness of the government's case with regard to intent, and that the conviction was less prejudicial than probative. Finally, the court limited the use of the conviction to intent, and gave an instruction that it adopted from another case regarding Rule 404(b) evidence. Thus, despite the fact that some of the court's language may suggest otherwise, it appears that it admitted MacLean's prior conviction under Rule 404(b), for the purpose of establishing his intent.

MacLean's prior conviction for obstruction of justice and witness and evidence tampering was probative of his intent to evade taxes, as it arose out of his attempt to prepare himself and others for testimony before a grand jury investigating the MacLeans for tax evasion. See Baker, 432 F.3d at 1205. None of the parties argue that there is insufficient proof that MacLean was convicted of obstruction of justice, id., and, in fact, the MacLeans stipulated to this fact at trial. Thus, as long as the evidence's probative value was not substantially outweighed by undue prejudice, then it was properly admitted. Id.

The evidence of MacLean's prior conviction is probative of his intention to evade taxes because it showed that when confronted with an investigation into his actions, he interfered with witnesses and evidence, suggesting that he was attempting to prevent the grand jury from discovering what he had done. The evidence also suggested, as the court's instruction allowed the jury to consider, that

19

MacLean knew his actions had been illegal. While this strong evidence was obviously prejudicial to MacLean's defense, it was not unduly so, especially considering the court's two limiting instructions that very clearly instructed the jury on the use of the evidence. United States v. Calderon, 127 F.3d 1314, 1333 (11th Cir. 1997) ("Furthermore, any unfair prejudice that may have existed was mitigated by the district judge's limiting instruction.").

While MacLean argues that the jury's accidental observation of him in the marshals' custody aggravated the prejudice caused by the evidence of his prior conviction, it is not clear that the jury saw him or the handcuffs. See, e.g., Marquard v. Secretary for Dept. of Corrections, 429 F.3d 1278, 1309 (11th Cir. 2005), cert. denied, 126 S. Ct. 2356 (2006) (holding that due process claim based on shackling in front of the jury was meritless, because there was no evidence in the record the defendant had been shackled in front of the jury). Moreover, his defense counsel declined the cautionary instruction offered by the court.

Finally, the MacLeans allege that the evidence was especially prejudicial to Mary Ann. However, the court specifically instructed the jury not to consider the evidence with regard to her, and "we assume that juries follow their instructions." United States v. Kennard, 472 F.3d 851, 858 (11th Cir. 2006) (citation omitted), petition for cert. filed, No. 06-10149 (March 14, 2007). In this case, the nature of

20

the evidence was such that it would not have been difficult for the jury to separate it from consideration of Mary Ann's guilt.  Further, as discussed below, the evidence was sufficient to support her conviction, even without this evidence.

For all these reasons, we conclude that the district court did not abuse its discretion when it admitted Maclean's prior conviction into evidence.

B.  Whether the district court erred in denying the MacLeans' motion for a judgment of acquittal based on insufficient evidence

The MacLeans also argue that the district erred in denying their motion for a judgment of acquittal based on insufficient evidence.  Specifically, they argue that: (1) the government had to establish the existence of an assessment of the taxes owed as a condition precedent to establishing tax evasion; and (2) the government failed to establish that they had taken any affirmative act of evasion.  Notably, the MacLeans do not argue that the evidence was insufficient to show that their tax evasion was willful.

We generally review de novo the disposition of a defendant's properly preserved motion for judgment of acquittal.  United States v. Perez-Tosta, 36 F.3d 1552, 1556 (11th Cir. 1994) (citation omitted).  "The district court's decision on sufficiency of the evidence is entitled to no deference by this court."  United States v. Taylor, 972 F.2d 1247, 1250 (11th Cir. 1992).  "The district court's denial of [] motions for a judgment of acquittal will be upheld if a reasonable trier of fact could

21

conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir. 2000) (per curiam) (citation omitted).

In order to be sufficient, the evidence need not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." United States v. Young, 906 F.2d 615, 618 (11th Cir. 1990) (citation omitted). This is so because "[a] jury is free to choose among reasonable constructions of the evidence." United States v. Vera, 701 F.2d 1349, 1357 (11th Cir. 1983) (citation omitted). We must view the facts, and draw all reasonable inferences therefrom, in the light most favorable to the government. United States v. Hansen, 262 F.3d 1217, 1236 (11th Cir. 2001) (per curiam) (citation omitted).

Under section 7201, "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall . . . be guilty of a felony." 26 U.S.C. § 7201. "To convict a person for criminal tax evasion under [this section], the government must prove three elements: 'willfulness; the existence of a tax deficiency, . . . and an affirmative act constituting an evasion or attempted evasion of the tax.'" United States v.

22

Callahan, 588 F.2d 1078, 1081 (5th Cir. 1979) (citing Sansone v. United States, 380 U.S. 343, 351, 85 S. Ct. 1004, 1010 (1965)).

The MacLeans do not challenge on appeal the element of willfulness. Accordingly, this argument is abandoned.  See United States v. Ford, 270 F.3d 1346, 1347 (11th Cir. 2001) (per curiam) ("[I]ssues and contentions not timely raised in the briefs are deemed abandoned").

As to the tax deficiency element, an IRS agent testified regarding the MacLeans' income and tax liabilities for each of the tax years in the indictment. Rather than attacking this testimony as itself insufficient to support the charge, the MacLeans assert that the government was required to establish that the IRS had completed a formal assessment of their tax deficiency.  In support of this argument they point to 26 U.S.C. §§ 6201 (establishing the government's authority to make assessments); 6203 (establishing the method of assessment); and 6303 (governing notice and demand for tax following an assessment).  While we have not addressed this issue, other circuit courts have held that a formal assessment is not required to prove tax evasion.  See United States v. Silkman, 156 F.3d 833, 835 (8th Cir. 1998) (holding that an IRS assessment is "only prima facie proof of a deficiency" that still leaves the issue for the jury); contra. United States v. England, 347 F.2d 425, 430 (7th Cir. 1965) ("There is no doubt that a valid assessment, and proof

23

thereof, was an essential element of the case against appellants.") (citation omitted).  Further, it is well-established in our court that a deficiency may be proven with circumstantial evidence through a number of methods.  United States v. Carter,  721 F.2d 1514, 1538 (11th Cir. 1984), vacated in part on other grounds, United States v. Lightsey, 886 F.2d 304, 305 (11th Cir. 1989).  Accordingly, the evidence was sufficient on this point.

As to the affirmative act element, "[w]hile there are indeed two elements of affirmative act and willfulness, they are related, and evidence which goes to prove willfulness may also go to the question of doing an affirmative act."  United States v. Stone, 702 F.2d 1333, 1339 n.4 (11th Cir. 1983) (per curiam) (citation omitted).  Thus, the Supreme Court's words could arguably be applied to either factor, when it stated that

> affirmative willful attempt [to defeat and evade taxes] may be inferred from conduct such as keeping a double set of books, making false entries of alterations, or false invoices or documents, destruction of books or records, *concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal.*

Spies v. United States, 317 U.S. 492, 499, 63 S. Ct. 364, 368, 87 L.Ed. 418 (1943) (emphasis added).  Alleging that the defendant was "concealing or attempting to conceal income" fulfills the affirmative act requirement.  United States v. Edwards,

24

777 F.2d 644, 650 (11th Cir. 1985) (held in the context of the sufficiency of an indictment).

Here, the testimony at trial established a number of affirmative acts on the part of both of the MacLeans that could be construed as acts of evasion. Most significant with regard to MacLean was the acquisition of the Apente Management Group trust, which testimony at trial showed fit the description of a "sham" trust. MacLean used the Apente Management Group name to operate as an independent contractor and receive his income through checks made out to the company without using his social security number or having taxes withheld. Further, he then paid for living expenses with cash drawn directly from the company's checking account. When he purchased a vehicle with cash, he also titled it in the name of a trust. Finally, MacLean admitted to not filing any tax returns, and he admitted to avoiding paying taxes. With regard to Mary Ann, she also operated as an independent contractor, with the same benefits of doing so, and was paid first in her husband's name and then in the name of the Apente Management Group. She purchased two vehicles in cash, using multiple addresses, and titled the vehicles in the names of two different trusts.

As a whole, these were acts that the jury could have reasonably decided showed beyond a reasonable doubt that the MacLeans intended to conceal their

25

income or mislead the IRS. See Spies, 317 U.S. at 499, 63 S. Ct. at 368. Although Mary Ann seemed to contradict some of the evidence in her testimony, the jury was free not only to disbelieve her, but also to believe the opposite of what she said. United States v. Turner, 474 F.3d 1265, 1280 (11th Cir. 2007) ("[T]he jury, hearing [the defendant's] words and seeing [her] demeanor, was entitled to disbelieve [her] testimony and, in fact, to believe the opposite of what [she] said") (citation and quotations omitted). For all these reasons, the evidence was sufficient to support the MacLeans' convictions in this case.

C. Whether the district court plainly erred by failing to find that the Internal Revenue Code, or parts of the code, are unconstitutionally vague

The MacLeans briefly argue that if an assessment is not a condition precedent to proving tax evasion, then Title 26 of the United States Code, also called the Internal Revenue Code ("IRC"), is void for vagueness. Specifically, they assert that "[i]t is obvious that the government did not follow the plain language of [26 U.S.C. §§ 6201, 6303, and 6331(a)] when it [indicted the MacLeans]." Appellants' Br. at 18.

We generally review the challenge of a statute as unconstitutionally vague de novo. United States v. Paradies, 98 F.3d 1266, 1282 (11th Cir. 1996) (citation omitted). However, because the MacLeans raise this argument for the first time on appeal, "it is within our discretion to either address [it] or consider [it] waived."

26

United States v. Dupree, 258 F.3d 1258, 1259 (11th Cir. 2001). Accordingly, we will only review this argument for plain error. United States v. Olano, 507 U.S. 725, 731-32, 113 S. Ct. 1770, 1776 (1993). Under this standard, the MacLeans must establish that: (1) an error occurred; (2) it is plain; (3) it affected their substantial rights; and (4) it seriously affected the fairness and integrity of the proceedings. Id. at 731-32, 113 S. Ct. at 1776.

"Vagueness may invalidate a criminal statute if it either (1) fails to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits or (2) authorizes or encourages arbitrary and discriminatory enforcement." United States v. Eckhardt, 466 F.3d 938, 944 (11th Cir. 2006) (citation and quotations omitted), cert. denied, 127 S. Ct.1305 (2007). To the extent that a statute requires showing "knowing and willful" conduct, any other vagueness contained in the statute is mitigated. United States v. Starks, 157 F.3d 833, 840 (11th Cir. 1998).

The MacLeans argue that if a formal assessment is not required for a conviction for tax evasion, then the IRC, and in particular, §§ 6201, 6203, and 6331, are unconstitutionally vague. Beyond alleging that "it is obvious" that the prosecution did not follow the plain language of these sections, Appellants' Br. at 18, presumably by not preparing a formal assessment in this case, the MacLeans do

27

not explain what about these sections, or the rest of the IRC, is vague.  We have never held that any of these sections, let alone the entire IRC, is unconstitutionally vague.  Even if this issue is fully raised on appeal, and even if it was error, it was not plain.  United States v. Chau, 426 F.3d 1318, 1322 (11th Cir. 2005) (holding that an error is not plain "if it is not clear under current law") (citation and quotations omitted).

## III.  CONCLUSION

After a thorough review of the record and consideration of the arguments by the parties we find no reversible error on the part of the trial court.   Accordingly, we **AFFIRM.**